In the Matter of the CITY OF NEW YORK, Appellant-Respondent, Relative to Acquiring Title to Real Property Bounded by MORRIS PARK AVENUE and OTHER STREETS, in the Borough of The Bronx, Selected as a Site for a New General Hospital and a New Tuberculosis Hospital. MARIE CINELLI, Respondent-Appellant.

First Department, May 6, 1952.

*Joseph J. Dunn* of counsel (*Harry E. O'Donnell* and *Reuben Levy* with him on the brief; *Denis M. Hurley, Corporation Counsel*), for appellant-respondent.

*Anthony Romano* of counsel (*Louis Raybin* with him on the brief; *Romano & Schenker,* attorneys), for respondent-appellant.

*Per Curiam.* The order appealed from does not compel the City of New York to surrender a building condemned for its own use; it holds merely that if the city elects to acquire petitioner's residence as a dwelling for one of the general medical superintendents of the department of hospitals, it cannot avoid paying just compensation for the features of the building which render it useful and suitable for that purpose. Compensation for such features had been disallowed as an element in the award pursuant to the city's contention that they were unique and added no value to the structure. Now it appears that their existence creates the value which has resulted in the institution of the condemnation proceeding. Under the order appealed from, the city had the option to keep the building by reopening the condemnation proceeding in order that compensa-

tion might be awarded to the owner for this element of damage which had been disallowed. Otherwise the former owner of the damage parcel is allowed to remove the building from the land as authorized by section B15–20.0 of the Administrative Code of the City of New York, on payment of $5,000 to the city, representing what has been found to be its salvage value. The city has elected not to reopen, choosing to stand upon the contention that it is entitled to have the benefit of these unique features without paying for them.

The correctness of the statement in the dissenting opinion is undisputed that a different amount of damages cannot be awarded merely because the condemnor intends to put the property to one use rather than to another (*Matter of Simmons* [*Ashokan Reservoir, Sec. No. 6*], 130 App. Div. 350 [3d Dept. 1909], affd. 195 N. Y. 573 [1909], affd. *sub nom. McGovern* v. *City of New York,* 229 U. S. 363 [1913]), but that does not answer the point that nevertheless '' the commissioners must consider any special intrinsic quality of the property taken, rendering it peculiarly adaptable for the purpose for which it was taken. Thus in *Matter of N. Y., L. & W. R. Co.* (27 Hun, 116) the bed of an abandoned canal was held to have intrinsic value for railroad purposes, and in *Matter of Gilroy* (85 Hun, 424) it seems to have been held that land under water possessed intrinsic value for reservoir purposes.'' (*Matter of New York, Westchester & Boston Ry. Co.,* 151 App. Div. 50, 56; *Matter of Superintendent of Highways, Frankfort,* 193 Misc. 617.) This follows the principle declared in *Matter of City of New York* (198 N. Y. 84, 88): '' By analogy it would seem that when the state compels a man to give up his land for public use, and permits him to recover, not what he thinks it is worth, but only its fair market value, he should at least have the right to prove every element that can fairly enter into the question of market value.'' (See Annotation on '' Special Value or adaptability of property for purpose for which it is taken, as an element of, or matter for consideration in fixing, damages in condemnation proceedings '', 124 A. L. R. 910, 914.)

In the instant case the same Supreme Court Justice who made the award to petitioner for damage parcel No. 91 has, by the order appealed from, held that he erred in omitting to include an allowable element of value. The city objects to his having reopened the condemnation proceeding in order to correct the award. We think that he had power to open it in view of the circumstance that the city's maps, which were introduced into evidence upon the trial of the condemnation proceeding, showed

that the residence upon this parcel was to be razed. It was not until after petitioner had begun this proceeding for permission to remove the building under section B15–20.0 of the Administrative Code, that the city disclosed that it wanted this building to be used as a dwelling. The adaptability for that purpose had previously been disputed by the city's argument that the building as a residence was not suited to the location and would be removed. When it appeared, contrary to the city's former contention, that features of this building which were claimed to have been worthless created, in the language of the case above cited, a " special intrinsic quality of the property taken, rendering it peculiarly adaptable for the purpose for which it was taken ", the Trial Justice fairly and properly determined that he should reconsider the elimination of this element of value by reopening the main proceeding.

Although the order appealed from dated June 25, 1951, provides for the vesting of title to the building in petitioner on payment of $5,000 without mentioning the reopening of the main proceeding, the reason for this omission is that a prior order had been entered January 10, 1951, granting leave to the city, if it elected to retain the building, to reopen within twenty days for the purpose of having the value of the improvement reassessed so as to conform more nearly to its actual value. The city having elected not to reopen, and having allowed the twenty-day period to expire, there was no occasion to refer to that aspect in the order appealed from entered June 25, 1951. The time for the city to move to reopen should, however, be extended by the order to be entered on this appeal.

The order amending the final decree insofar as it affected damage parcel No. 91 by vesting title to the building and improvements in Marie Cinelli on payment by her of $5,000, should be modified by extending the time granted to the City of New York until twenty days after service of a copy of the order to be entered hereon with notice of entry, in which to move to reopen the condemnation proceeding for the purpose of having the value of the improvement on this damage parcel reassessed so as to conform to its actual value, if it intends to keep the building, in which event the building shall be retained by the city, and as so modified, the order should be affirmed, with costs to petitioner. The appeal from the order denying petitioner's motion for reargument should be dismissed. Settle order.

CALLAHAN, J. (dissenting). I vote to reverse the order and deny the motion on the ground that the statute (Administrative Code, § B15–20.0, subds. d, e) should be construed as permissive and as relating merely to buildings which the city intends to demolish. The aforesaid subdivisions d and e were added by chapter 588 of the Laws of 1946, and continued by chapter 332 of the Laws of 1948. Section 1 of the Session Laws enacting these measures declared the existence of a housing shortage as an emergency requiring that provision be made for the expeditious sale and removal of dwellings affected by condemnation proceedings. The new subdivisions were added to section B15–20.0 of the Administrative Code, which relates to *agreements* for compensation for the removal of structures as a substitute for paying the value thereof. It would seem to me that the Legislature intended a substitute for the prior procedure of selling surplus buildings at auction to the highest bidder and to aid in relieving the housing shortage by giving preference to the former owner and others in accordance with the statute.

In my opinion the Legislature never had it in mind that the city be forced to surrender a building intended for its own use at a sum based on salvage value equal to only a fraction of the amount which the court had compelled the city to pay for taking the building. For instance, in the present case the order would require the city to give up a building for $5,000, although it had just paid $30,000 for the same.

It is true that the law first provides that the owner in possession *shall* have the right to petition the court to fix the value. Later it provides that if the former owner has not so petitioned, the representatives of the city *may* petition the court, which may allot the building in the order of preference provided for tenants, veterans and other designated classes of persons. Unless a different rule was intended to be applied with respect to the rights of a former owner as distinguished from those of tenants and veterans, a distinction which might well render the statute invalid, it would seem that the mandatory " shall " should be construed to mean "may", for clearly the presentation of a petition and the transfer of the building in the second instance was discretionary with the city and would only occur when the building was to be demolished.

This construction is supported by a memorandum filed with the Governor in connection with the bill which became chapter 588 of the Laws of 1946. That memorandum recites: " This

bill is necessary to correct a bad situation which has arisen as a result of the housing shortage. Under existing law, the city is compelled to offer such dwellings to the highest bidder and as a result, a small group of speculators have been specializing in purchasing the condemned dwellings, removing them, and then reselling them at exorbitant prices which are far in excess of the ability of the dispossessed owner to pay. The bill will correct that situation.'' (New York State Legislative Annual 1946, pp. 131–132.)

The '' existing law '' referred to in the above quotation was, undoubtedly, section 384 of the New York City Charter. There was no prior law requiring the city to sell dwellings at auction which it desired to keep for its own purposes. Thus, it would seem reasonable to infer that the amendatory statutes were not intended to require a compulsory surrender of any building taken in condemnation and needed by the city.

It is suggested that the order appealed from, when read in the light of an earlier memorandum by the trial court, did no more than require the city to reopen the proceedings to permit the court to make a different award of damages, if the city intended to keep the building rather than demolish it. I know of no authority for such procedure. There appears to be no basis for the opening of a final decree under such circumstances. Nor is there any basis in law for a different award as the value of the condemned property because the condemnor has decided to put it to one use rather than another. (*Matter of Simmons* [*Ashokan Reservoir, Sec. No. 6*], 130 App. Div. 350, affd. 195 N. Y. 573, affd. *sub. nom. McGovern* v. *City of New York*, 229 U. S. 363.) The cases in the majority opinion relating to the intrinsic worth of property being affected by the uses to which it might be put by the condemnor have no relation to a residential property in which the owner has installed unique features to gratify his individual tastes or desires, and which features reflect no increase in market value.

The city took the property in fee and presumably has been required to pay the fair market value. No appeal was taken from the decree fixing the award, and there was no authority in the present circumstances to reopen it for the modification of the sum awarded. In any event, as section B15–20.0 had no application to the present property, the entire proceeding was unwarranted.

I vote to reverse the order and deny the motion.

DORE, J. P., COHN and VAN VOORHIS, JJ., concur in *Per Curiam* opinion; CALLAHAN, J., dissents and votes to reverse the order and deny the motion, in opinion in which SHIENTAG, J., concurs.

Order amending the final decree insofar as it affected damage parcel No. 91 modified in accordance with the opinion herein and, as so modified, affirmed, with costs to petitioner. Appeal from order denying petitioner's motion for reargument dismissed. Settle order on notice.