Bergan, J.
On review of a decree entered at the New York Special Term fixing the amount of the award in condemnation for the acquisition of the Polo G-rounds at $2,614,175 for the land and $1,724,714 for the improvements, the Appellate Division affirmed the award for the land and reduced that for the improvements to $175,000.
If there be legally sufficient and substantial evidence to support the affirmed finding of the Special Term on the value of the land, it will be sustained here (Matter of City of New York [Sound View Houses — A. F. & G. Realty Corp.], 307 N. Y. 687; Mayer v. Temple Props., 307 N. Y. 559, 562; Farr v. Newman, 14 N Y 2d 183; CPLR 5501, subd. [b]).
In view of the difference of opinion between the Appellate Division and the Special Term as to the value of the improvements, the question is open here as to which decision is conformable with the weight of evidence (Matter of City of New York [A. & W. Realty Corp.], 1 N Y 2d 428, 430; People ex rel. MacCracken v. Miller, 291 N. Y. 55, 61; CPLR 5501, subd. [b]).
At the Appellate Division there was a majority vote to affirm the Special Term’s decision on the land value and a different majority vote to modify the decision on the value of the improvements. A somewhat similar situation exists in this court: a majority would affirm the Appellate Division and the Special Term on the land value; a majority would reverse the Appellate Division and affirm the Special Term on the value of the improvements.
*624 The attack by the owners of the fee, claimants-appellants Coogan, on the land value as found and affirmed is based on their contention that since the Special Term was of opinion the best use of the land at the time of taking was “ its actual use ”; that since the actual use was as a stadium; and that since the only opinion evidence in the record of its value as a stadium was that given by a witness who stated that for stadium purposes the land had a value of $5.28 a square foot or $3,950,000, this amount is the only value attributable to the land supported by substantial evidence in the record.
The proof of value of $5.28 a square foot was not adduced by the Coogans, who contended for a higher value of $7 a square foot for high-rise apartment development. It was adduced by the claimant-appellant National Exhibition Company (New York Giants), the lessee of the Polo Grounds and the owner of the improvements. This claimant has, however, no legal interest in the award for the land.
The Special Term found the value of the land to be $3.50 a square foot to reach its award of $2,614,175. No witness testified to an opinion stating exactly this value. But there was a wide range of expert view as to value expressed in the record, related, in turn, to the further opinions of the witnesses as to what they thought would be the “ best use ” of the land; and the $3.50 per square foot found by the Special Term and by the Appellate Division lies well within the over-all range of this evidence.
The expert witness called by the city was of opinion the value was $2.64 a square foot; that its “best use” was for industrial development. The other witnesses testified, as it has been noted, to values of $7 and $5.28 respectively.
The conclusion of the Special Term ‘ ‘ After extensive analysis of the problems presented” that the land had a value of “ $3.50 per square foot overall ” and the acceptance by the Appellate Division of the “ correctness of the court’s finding ” in this respect, are based on substantial evidence, as we view it, and are permissible on analysis of this record.
This is not a case, then, in which there is no evidence within a range embracing the actual finding to sustain the decision ■as in Matter of City of New York (A. & W. Realty Corp.) (1 N Y 2d 428, 433, supra); or a case where there ought to be a remis *625 sion to give consideration to factors not shown to have been weighed into the decision, as in Matter of City of New York (Clearview Expressway) (9 N Y 2d 439); nor is it a case where there has been an erroneous exclusion of relevant evidence, as in Matter of City of New York (Inwood Hill Park) (230 App. Div. 41, affd. 256 N. Y. 556).
It is, rather, a permissible factual evaluation in an area in which the Supreme Court, in its fact-finding role, is not bound rigidly to follow literally opinions expressed for its guidance (cf. Commercial Cas. Ins. Co. v. Roman, 269 N. Y. 451, 456), and where it can be seen that what has been found lies within the compass of relevant proof.
The appellants Coogan lay stress on the decision in Matter of City of New York (A. & W. Realty Corp.) (supra) as holding that the result reached here cannot be sustained. But that case turned upon the circumstance that there was no factual basis for the capitalization rates employed .at the Appellate Division which were higher than those testified to by any witness (p. 432). The court was careful, however, in holding that the record would not in that case sustain the capitalization rates, to observe that the decision did not mean “ that an award may never be higher or lower than the experts’ estimates of value ” (p. 433).
Because one witness called by a party who has only a tangential concern with the land value expressed the view that the best use of the land was for a stadium, the court, able to reach the same conclusion from a record showing long past and continued contemporaneous utilization of the land for just that use, was not on this record bound to say that the witness was just exactly right in his view that $5.28 per square foot was its value.
Nor is the ultimate judgment of the Supreme Court expressed at Appellate Division in respect of the $3.50 per square foot value either arbitrary or ill-founded. The Appellate Division’s acceptance of the Special Term’s value is logically developed in the court’s opinion in a demonstration of the inherent weaknesses of the $5.28 value in the light of actual economic experience with the property. That this value was “ grossly exaggerated ’ ’, the opinion notes, ‘1 is virtually compelled by the facts ”.
*626 There is, therefore, a sufficient record of substantial evidence to support the finding on the value of the land. The dissent of Justice McNally on the land value seems not to have rested on the legal insufficiency of the record to sustain the finding made, but rather on his view of the facts, a question open at the Appellate Division, that the “record supports” the land value for stadium use at $5.28, which is a very different question from that open in this court, now presented with an affirmed finding on this issue.
On the value of the improvements, the weight of evidence seems to sustain the view taken at Special Term in awarding $1,724,714 on the structures. The stadium was found to be a specialty for which reconstruction cost less depreciation is one accepted method of fixing value. The Special Term found the reconstruction cost of structures and fixtures to be $5,749,045, to which it applied a factor of 70% to represent physical and economic depreciation as well as obsolescence to reach $1,724,714.
The Appellate Division was of opinion that the depreciation factor was over 90% of the original value. It allowed, however, $100,000 for the remaining life of the structure, to which it added $75,000 as scrap value, to reach an over-all allowance for the structure of $175,000.
This method was somewhat differently based from the line of reconstruction cost less depreciation followed at Special Term, but, of course, the latter is not the only acceptable method to find value of a specialty. The end result reached at the Appellate Division is, however, to reduce by about 90% the amount found at Special Term, which is also the percentage the court found would have been appropriate to a depreciation of reconstruction cost.
The considerations which lead us to think that the evaluation of structures made at Special Term is conformable with the weight of evidence are in large measure those developed in the dissenting opinion of Justice Rabin on this aspect of the case. On the date of taking the stadium structure alone was assessed by the city for tax purposes at $525,000. This assessment did not include seats and parking lot fixtures to which an additional value of $450,000 is attributed. Assessed value, which is the judgment of officials charged with a special duty of limited scope, may not have large significance in a condemna *627 tian proceeding, especially if there be other adequate proof in the record, but, in looking at the end result on appellate review, it seems to have some bearing that the same condemning authority will be called on to pay $175,000 to acquire property only a portion of which it had concurrently assessed at three times that sum.
Although the lease had only eight months to run at the time of taking, the record fully sustains the view that this was not the limit of the usefulness of the stadium nor the sole criterium of its value. There is proof that the stadium had a long period of future usefulness and the city’s witness said its life would exceed the term of the lease.
Although the New York Giants discontinued use of the Polo Grounds as a stadium and moved to San Francisco in 1957, four years before the condemnation, they continued to rent it as opportunity allowed for miscellaneous events and gatherings.
The city did not demolish the stadium at the time when the lease would have expired but continued it as a sports field for another baseball team. The city, in its brief in this court, notes that “ after title had vested, the New York Mets temporarily played at the Polo Grounds, pending the completion of the City-owned Shea Stadium”.
Indeed, it seems undisputed that the timing of the condemnation of this land, ultimately intended to be used for a public housing project, was to provide a stadium for the New York Mets. The stadium had, of course, since the New York Giants left it, suffered obvious economic depreciation and its obsolescence is shown in the record. But these factors were reflected fairly in the 70% depreciation found at Special Term, and this finding is in accord with the weight of evidence. The allocation of 85% of the award for the structures to the lessee was proper under the specific agreement of the parties and the terms of the lease.
The order of the Appellate Division should be modified by reinstating the award for improvements made in the decree entered at Special Term, and, as thus modified, affirmed, with costs to the city against appellants Coogan and costs to the lessee National Exhibition Company against the city.