■ In the Matter of TOWN OF HEMPSTEAD. (Action No. 1.) In the Matter of TOWN OF HEMPSTEAD. (Action No. 2.) TOWN OF HEMPSTEAD, Respondent; MALIBU ASSOCIATES, INC., Appellant; OVIDE E. DE ST. AUBIN et al., Respondents. — In a condemnation proceeding, claimant Malibu Associates, Inc., appeals, as limited by its brief, on the ground of inadequacy, from so much of a partial final decree of the Supreme Court, Nassau County (Meade, J.), dated May 2, 1979, as awarded compensation for the improvements on the condemned realty. By order dated April 6, 1981, this court reversed the partial final decree insofar as appealed from, on the law, and remitted the matter to Special Term for further proceedings (81 AD2d 591). On June 23, 1982, the Court of Appeals reversed the order of this court and remitted the case here for consideration of the facts (*Matter of Town of Hempstead* [*Malibu Assoc.*], 56 NY2d 1020). Partial final decree reversed insofar as appealed from, on the law and the facts, without costs or disbursements, and matter remitted to Special Term for a further hearing, and entry of a judgment in favor of claimants Malibu Associates, Inc., and Ovide E. de St. Aubin and Honore de St. Aubin, awarding them, subject to allocation in accordance with such agreement as they may have between them, (1) the stipulated sum of $1,380,000 for the beach club improvements (that sum representing reproduction cost less physical and functional obsolescence and a 5% economic obsolescence), less an amount, if any, for economic obsolescence in excess of the stipulated 5%, such excess (if any) over 5% to be determined by Special Term, based upon evidence adduced at the hearing, including any portions of the record of the original trial which the parties deem relevant and competent; (2) the sum of $175,000 for the residential structures; and (3) the value of the land (36.413 acres) based on the actual use on the vesting date, April 15, 1968. The subject property was operated as a private beach club from approximately 1954 to the vesting date, April 15, 1968. After vesting, the Town of Hempstead continued to operate the property as a beach club. Trial was held in April and May, 1978. At the time of trial, 10 years after vesting, the town was still operating the premises as a beach club. As noted in the dissenting opinion of Justice Lazer, rendered with respect to our original decision (81 AD2d 591, 593, *supra*): "For 14 years, until the property was taken in 1968, Malibu or its subsidiaries operated a beach and cabana club on the premises, during which time Malibu also became the fee owner of a portion of the land. Since both the fee and leasehold interests were extinguished by the condemnation, Malibu and St. Aubin simplified adjudication of the conflict between their interests by agreeing that Malibu's

interest in the land was 28.3% while its interest in the improvements was 71.7% with St. Aubin's interests the converse. The obvious consequence of the agreement was that an award which fixed a high improvement value would benefit Malibu, which had constructed the club facilities, while high land value was to St. Aubin's advantage. To accommodate this stipulation, the claimants requested the court to allocate its award to indicate separately the value of the land and the improvements. Malibu now attacks the allocations and the total amount awarded; St. Aubin defends both." At the trial, the town and the St. Aubins contended that the highest and best use of the property was single-family residential. Therefore, the property should be valued as raw acreage with an increment assigned for a potential for residential development. Using this approach, these two parties submitted differing values. The St. Aubins valued the property at $72,500 per acre and the town at $53,500 per acre. Claimant Malibu, however, contended that the highest and best use for the parcel was for beach club purposes and that circumstances dictated employment of a summation approach consisting of a land value of $35,000 per acre as enhanced by the stipulated sound value of the beach club improvements. After a lengthy and complex trial, Special Term, on September 27, 1978, rendered a careful, in-depth decision. It found, *inter alia,* that: "This Court finds from the evidence that the subject with its improvements was an ideal site for the bathing and recreational purposes to which it had been dedicated before and after acquisition, that such use conformed to comprehensive planning studies conducted by both [the Town of Hempstead] and Nassau County, that there was an increasing need and demand for such facilities, and that governmental bodies at many levels, including petitioner, were providing such facilities as essential to the health and welfare of their residents (*Inc. Village of Lloyd Harbor v Huntington,* 4 NY2d 182, 191)". It also found: "[I]t is a fact that in the main those beach club facilities owned and operated by Malibu have been operated by the petitioner since vesting to the date of trial." We adopt these quoted findings. The trial court concluded however, that: "From the totality of the evidence this Court finds that the highest and best use of the subject property was for the development of single-family residential homes, that the beach club improvements impeded the highest and best use of the land and thus may be awarded no value. In the *Matter of City of New York* (*Coogan*), (20 NY2d 618, 632), Judge Breital [*sic*] stated: 'An improvement doomed to a loss operation has little or no value' * * * From the findings made this Court determines that the following awards should be made to the claimants

| "36.413 acres of land at $59,000 per acre | $2,148,367.00 |
| "6 residential structures | 175,000.00 |
| | $2,323,367.00" |

Thus, nothing was awarded for the beach club improvements. Malibu, having an interest in the land and improvements, but a higher percentage of interest in the improvements than in the land, appealed. On April 6, 1981, this court (81 AD2d 591, *supra*) reversed Special Term's *partial final* decree insofar as appealed from, and directed that the town compensate appellant Malibu for the reasonable reproduction value, less depreciation, of the beach club structures, such sum to be determined after a hearing at Special Term. We held, *inter alia,* that (p 592): "Special Term found that the highest and best use of the condemned property would be single-family residential use, and thus denied compensation for the reproduction value of the beach club facilities, in that

they interfered with the highest and best use of the property. We conclude that this ruling was error. There is substantial support for the proposition that the value of improvements which interfere with the judicially determined best use of condemned property, and which consequently must be destroyed, is not compensable (see *Van Kleeck v State of New York*, 18 NY2d 897; *Matter of County of Nassau [Colony Beach Club of Lido]*, 43 AD2d 45, affd 39 NY2d 958; *Irv-Ceil Realty Corp. v State of New York*, 43 AD2d 775; *Spano v State of New York*, 22 AD2d 757). However, this case is manifestly different. Not only did the improvements not have to be destroyed, but they were actually utilized by the town in connection with the use to which it put the property. Under circumstances such as these, where improvements inconsistent with the best use of the land are nonetheless utilized by the condemnor for the purpose for which they had been erected, the value of the improvements must be compensated (see *Matter of Port Auth. Trans-Hudson Corp. [Hudson Rapid Tubes Corp.]*, 20 NY2d 457, remittitur amd 20 NY2d 968, cert den 390 US 1002; *Matter of City of New York [New Gen. Hosp. — Cinelli]*, 280 App Div 196, affd 305 NY 835; *City of New York v State of New York*, 49 AD2d 659). It would be both irrational and unfair for the town to use the beach club structures for the same purpose as did appellant, and yet not compensate it for the structures because they are inconsistent with the best use of the land. Consequently, the town should compensate appellant for the reasonable reproduction value, less depreciation, of the structures, such sum to be determined after a hearing." We note that in *City of New York v State of New York* (49 AD2d 659-660), cited in our decision, the Third Department held: "The State urges, however, that since the improvement in the form of bridge structures is inconsistent with the conceded highest and best use of the land such improvements have no value as a matter of law (*Acme Theatres v State of New York*, 26 NY2d 385), or alternatively, if value is to be given to such structures, the value of the land as found by the trial court must be reduced by 90% to reflect the diminution in utility and the decrease of the economic potential of the land available for use as industrial land. As a general proposition, the State's contentions might be correct but they are not controlling under the unique factual circumstances presented here (*Matter of Port Auth. Trans-Hudson Corp. [Hudson Rapid Tubes Corp.]*, 20 NY2d 457). As the Court of Appeals stated in *Matter of Port Auth. Trans-Hudson Corp. (Hudson Rapid Tubes Corp.) (supra*, p 468), neither it nor the United States Supreme Court has attempted ' "to prescribe a rigid rule for determining what is 'just compensation' under all circumstances and in all cases. Fair market value has normally been accepted as a just standard. But when the market value has been too difficult to find, or *when its application would result in manifest injustice to the owner or public*, courts have fashioned and applied other standards" (*United States v Commodities Corp.*, 339 US 121, 123 [emphasis added]; *United States v Virginia Elec. Co.*, 365 US 624)' The Court of Appeals then found that by 'any objective standard' an award of scrap value for the Hudson Tubes was unjust because the condemnor should not be permitted to say it is only worth scrap and then actually continue using it. (*Matter of Port Auth. Trans-Hudson [Hudson Rapid Tubes Corp.]*, *supra*, p 468.) Similarly, in *Matter of City of New York (New Gen. Hosp. — Cinelli) (280 App Div 196, affd 305 NY 835) the City of New York was not permitted to condemn a building and assert that its unique features rendered it of no market value, only salvage value, since the city intended to continue the building in use. Here also, the bridge was not destroyed but actually utilized in considerably substantial part for park purposes, the purposes for which it was taken. The award rendered should, therefore, be affirmed. Judgment affirmed, with costs" (emphasis supplied). After our decision was rendered, the town, claiming, *inter alia*, that our decision permits a "grossly

excessive award", moved to amend or clarify our decision, and for leave to appeal to the Court of Appeals from the amended decision. The town's motion papers included the following assertion: "This Court's opinion authorizes an award for land and an award for structures based on *inconsistent uses, i.e.,* sound value of structures devoted to commercial, beach club, *non-residential* plus $59,000 per acre of land award based on its development for single family *residential* uses." We denied the town's motion insofar as it sought leave to amend, but granted leave to appeal (84 AD2d 542). In dissenting from so much of our order as denied leave to amend, Mr. Justice Lazer stated, *inter alia,* that "I do not believe that *City of New York v State of New York* (49 AD2d 656) provides any support for endowing Malibu with a method of valuation that even a specialty could not achieve" (p 543). On June 23, 1982, the Court of Appeals (56 NY2d 1020) reversed the order of this court determining Malibu's appeal. The ground for the reversal was stated as follows (p 1022): "The Appellate Division's ruling on the law was error. If the value of the improvements is to be considered because the property continues to be used with the improvements, then the award for the land must take into consideration that the land is burdened with that use. The condemnor may be required to pay on the basis of a highest and best use other than the actual use without improvements inconsistent with that use *or on the basis of the land value in light of the actual use plus improvements*. The condemnee is not, however, entitled .to improvements plus land valued on a higher basis than the use with those improvements permits. Because the Appellate Division erred on the law, it did not consider the Special Term decree on the facts. The case is, therefore, remitted to the Appellate Division for consideration of the facts" (emphasis supplied). On the remittitur from the Court of Appeals we have reviewed the facts. We conclude that the trial court's decision fairly summarizes the testimony and evidence, but we disagree with the trial court's *conclusions* of fact and law upon which it based its award. We make the following findings. With respect to the beach club improvements, we find that on the unique facts of this case and for the reasons and on the basis of the authorities set forth in our original decision, the failure of the trial court to render an award for the value of the beach club improvements would be and was in fact a manifest injustice, that an award for the beach club improvements should have been made and should now be made in view of the actual use of the land, and that Special Term erred in failing to render such award. With respect to the beach club land value, the Court of Appeals noted (56 NY2d 1020, 1022, *supra*): "The condemnor may be required to pay on the basis of * * * *the land value in light of the actual use plus improvements*. The condemnee is not, however, entitled to improvements plus land valued on a higher basis than the use with those improvements permits" (emphasis supplied). On consideration of the facts, we further find that the $35,000 per acre beach club land value reported by Malibu's appraiser was not sufficiently established, that the evidence before us is not sufficient to permit us to fix beach club land value, and that, under all the circumstances of this case, determination of beach club land value should be made only after the parties have more fully developed and presented the evidence on that issue, at the hearing to be held at Special Term. The parties to this proceeding stipulated that the sound value of all improvements (except the six residential structures) is the sum of $1,380,000 (81 AD2d 591, 593), which amount represents the reproduction cost less physical and functional obsolescence and a 5% economic obsolescence, there being reserved to the claimants St. Aubins and to the town the right to demonstrate greater economic obsolescence as well as the claimed irrelevancy of the sound value itself in this trial. We find that the sound value of all improvements (except the six residential structures) is the stipulated sum of $1,380,000 less an amount,

if any, for economic obsolescence in excess of 5%, to be determined by Special Term on the basis of evidence to be adduced at the hearing on remand. The record before us is insufficient to conclusively determine that the St. Aubins and the town did not establish such excess so as to be foreclosed on that issue. We find, however, that the town is foreclosed by the Court of Appeals decision and our prior decisions from claiming that claimants are not entitled to an award for these improvements. In view of the nature and use of the six residential structures, we find no basis for disturbing the $175,000 award for those structures; their value is $175,000 and an award should be made accordingly. Damiani, J. P., Gibbons and Weinstein, JJ., concur.

Lazer, J., concurs in the result, with the following memorandum: I view the memorandum of reversal and remittitur from the Court of Appeals as a holding that under the circumstances described a condemnor who uses the improvements on the condemned property for the same purpose as the former owner must pay compensation for the improvements even if the application of conventional appraisal theory would preclude such compensation. I also concur in the result reached by the majority as expressed in the decretal paragraphs of its memorandum.