In the Matter of the COUNTY OF NASSAU, Appellant-Respondent, Relative to Acquiring Title to Real Property for Public Structures on the South Side of Park Street (Lido Boulevard), Vicinity of Bay Lane, Town of Hempstead. COLONY BEACH CLUB OF LIDO, INC., Respondent-Appellant.

Second Department, November 26, 1973.

*Joseph Jaspan, County Attorney (Leon Friedman and Robert T. Bloom of counsel)*, for appellant-respondent.

*Sprague, Dwyer, Aspland & Tobin (Joseph L. Tobin, Jr., of counsel)*, for respondent-appellant.

*George C. Pratt (George B. Costigan, Jr., and Samuel S. Tripp of counsel)*, for the Town of Hempstead, *amicus curiae.*

*Per Curiam.* This appeal and another appeal also presently before us bring up for consideration two condemnation awards

made by the Special Term in Nassau County, each for a separate parcel of property, title to which parcels was vested on the same day by the County of Nassau for park purposes. The claims were tried separately before the same Trial Justice and resulted in a partial final decree in the instant case for claimant Colony Beach Club of Lido, Inc. in the sum of $2,233,500, plus interest, and in a resettled partial final decree in the other case for claimant Shelborne Beach Club, Inc. in the sum of $1,219,781, plus interest and costs.

Both properties were condemned on December 18, 1967. The Shelborne appeal, by the claimant only, is from a resettled partial final decree dated January 6, 1972. In the Colony case, the claimant and the condemnor have appealed, from a partial final decree entered March 7, 1973.

Permission was granted to the Town of Hempstead to submit a separate brief in each appeal, as *amicus curiae,* as the town was involved with the county in a program whereby each of these municipalities acquired various ocean front properties at Lido Beach for development as public recreational facilities. Additionally, the town, in furtherance of this program, acquired similar adjacent properties approximately four months after the county takings. The unit values established in these proceedings will necessarily have an important impact on the Malibu, Monaco, Sands and Coral Reef Beach Clubs involved in this program of condemnation. All the beach clubs involved in the taking by the county and the town were built during the period 1954 to 1956 and were operated in the same general fashion.

While these appeals have not been consolidated, nevertheless, on April 26 of this year, on the argument of the Shelborne appeal, it appeared to this court that it would be appropriate that that appeal be held in abeyance pending the consideration by this court of the decree in the Colony case. This court thereupon entered an interim order on June 13, 1973 to such effect (*Matter of County of Nassau* [*Shelborne Beach Club*], 42 A D 2d 591).

Both appeals present common questions of law and fact. The briefs submitted by counsel have dealt with both properties generally. It appears appropriate, in view of the interaction of these cases upon each other, as well as upon the properties involved in the other takings, that we consider the matter in this single opinion.

The threshold question is whether the trial court utilized the appropriate theory of damages in making the awards. The examination of these appeals has not been simplified by the disparate positions of counsel with respect to defining the appro-

priate theory of damages applicable in this type of a taking. As above indicated, in the Shelborne case the county took no appeal, apparently willing to abide by the award of the trial court, regardless of whether the method of determining the award was legally permissible. The claimant in the Shelborne case likewise takes no exception to the summation method of appraisal therein employed. The trial court utilized this method, although properly denouncing it as inappropriate and decrying the failure of counsel to try the case upon a proper theory of damages. The result is that an award has been made on the summation theory of land value, plus depreciated building value, although the trial court ruled that the property lent itself to determination on the capitalization formula of income. The trial court found specifically that the highest and best use of the Shelborne property was as a cabana club, despite recognition of the uneconomic result of such use. The claimant in that case does not contest the inappropriateness of the theory employed, but merely seeks more money, claiming that it is entitled to a higher land value, such as was found by the trial court in the Colony case for the portion therein taken as to which the trial court held that the highest and best use was for residential improvement.

In the Colony case, although the entire property of approximately 30 acres was employed as one unit for cabana club purposes, some areas more intensively than others, the trial court adopted a theory of duality of purpose and found, with respect to the lesser utilized 9.4 acres, that the highest and best use was for residential purposes. The trial court then determined that as to the remaining approximately 20 acres the highest and best use was for cabana club purposes and proceeded to utilize the summation method of appraisal, despite recognition that that method was inappropriate.

The claimant in that case takes the position that more of the property should have been appraised for residential use, which concededly has a higher value than the cabana club use; that a going-concern value should have been added to the award, as well as interest for an alleged *de facto* taking going back to October 1, 1967; and that the claimant should have been awarded the "additional allowance" permitted in "a difficult or extraordinary case", under CPLR 8303 (subd. [a], par. 2).

The county contends that the land value found by the trial court in the Colony case for the property, available partly for business and partly for residential purposes, was excessive and that the trial court failed to give effect, in its consideration of

the improvement's value, to obvious economic and functional obsolescence. The county accordingly asks for reversal on the law and the facts.

The town takes the position with respect to both properties that the highest and best use is for residential subdivision, that the summation theory is totally impermissible, that the claimants are not entitled to compensation for loss of a going-concern value, that the trial court's awards were predicated upon an erroneous determination of the highest and best use and that a new trial should be granted in both proceedings.

We believe the position of the town is the only one supportable upon the records in both cases and that we must reverse and grant a new trial in each of these two cases upon the proper theory of damages, to wit, valuation of the properties as vacant residential.

A condemnation proceeding is not a private litigation. There is a constitutional mandate upon the court to give just and fair compensation for any property taken. This means '' just '' to the claimant and '' just '' to the people who are required to pay for it. The rule is abundantly clear that property must be appraised at its highest and best use and paid for accordingly. Where we find it is not, as we must necessarily do in this case, an improper theory of damages having been employed, we must remit for retrial upon the proper theory. This point is spelled out by counsel for the claimant in the Colony case, who correctly point out that in eminent domain the basis of the taking is the highest and best use, citing *Sparkill Realty Corp.* v. *State of New York* (254 App. Div. 78, affd. 279 N. Y. 656). The records in both the Colony and Shelborne cases clearly establish beyond peradventure that the highest and best use for these properties is residential.

We agree with the trial court that the mistaken theories of counsel and their unwillingness to heed the request of the trial court to present evidence of a more appropriate basis of valuation than the summation system resulted in awards based upon an erroneous theory. We do not agree that this court or the trial court is permitted to employ an erroneous theory of valuation in making an award due to counsel's failure or unwillingness to present evidence upon the proper theory.

We come now to the ultimate common question, to wit, what is the highest and best use of this land? As above-stated, in the Colony case the trial court, in an effort to arrive at a fair result, adopted a duality-of-use rule. It found that of the approximately 30 acres, 20 were intensively employed for cabana club

purposes, that the remainder was available for residential purposes and that these were the highest and best uses for these respective portions of the property. The claimant in that case is in agreement that the highest and best use of the land is for residential purposes, since its appeal is partly predicated upon the failure to ascribe such use and higher value to more of the acreage than the court employed for that purpose.

In our opinion, the trial court's characterization of two distinct uses of these two different portions of the same property as the highest and best uses was unsupported by the record. It is also clear that we do not have to meet the question of whether a cabana club is a specialty, for which the summation approach would be applicable. Before a property can qualify as a specialty entitled to the summation approach, the following criteria must be established.

(a) The improvement must be *unique* and must be specially built for the specific purpose for which it is designed;

(b) There must be a *special use* for which the improvement is designed and the improvement must be so specially used;

(c) There must be *no market* for the type of property (here, a beach and cabana club) and no sales of property for such use; and

(d) The improvement must be an appropriate improvement at the time of the taking and its use must be *economically feasible and reasonably expected to be replaced.*

The evidence to meet these criteria was less than adequate. It is quite clear that at the time of the vesting of the property the improvements no longer were appropriate ones, were not economically feasible and had no reasonable expectation of replacement. The trial court's request that evidence related to fair capitalization of income be made available indicates its recognition that the prerequisites for the summation system were nonexistent.

In the Shelborne case the trial court noted that the property was susceptible to either of two separate uses, that the claimant was entitled to the value of the highest and best use, that the property must be analyzed on the two possible uses and that a finding would thereafter have to be made of the highest and best use. As hereinabove stated, the trial court determined the value of the property on the summation approach and found the highest and best use to be for cabana club purposes, only because it felt bound by the failure of counsel of both sides to provide to it the expert testimony which it believed was appropriate. We quote from its initial opinion as follows:

'' The Court is not impressed with the rejection of the income method of valuation. Claimants called an expert in beach club operation and sales to estimate their claim for going concern value. It would have been most appropriate for him to have estimated rental value of this club to an owner of the land and buildings. It is interesting to note that the financial statements introduced into evidence for the total operation of land, buildings and business show a net profit to claimant of $20,672.04 in the year ending September 30, 1964; $9,836.48 in 1965; $54,223.11 in 1966 and $10,822.32 in 1967. It would have been most interesting to see these statements analyzed to produce fair market rentals and then to compare the capitalized result with petitioner's 2.7 million dollar valuation of this property.   *   *   *

'' Nevertheless, since both experts. found the specialty approach to be appropriate, the Court will not substitute its appraisal judgment for theirs. ''

The trial court, after that initial decision, again gave both the condemnor and the claimant the opportunity to submit further evidence of an economic valuation of the premises, but none was presented. We agree that the use of the summation method was inappropriate and improper, and thus, for the reasons noted above, impermissible to support the award made thereon.

Inquiry as to the income from specialty use property is relevant, but limited to determining whether the structural improvements are suitable and whether full structural values may be added to the land (*People ex rel. Hotel Paramount Corp.* v. *Chambers,* 298 N. Y. 372, 375). Income from the business use of property is not a basis for capitalization to determine value. It is the real estate value that can be capitalized and not entrepreneurial skills or lack of such skills. Evidence of real estate income value was not offered, although requested by the trial court. Therefore, operational results of these properties shed very little light on the value of the land, except to indicate that the values of the buildings on both properties were unsuitable for compensation in an award, as the buildings impeded rather than added to the highest and best use of the land. These figures, therefore, merely underscore the lack of qualification of these properties to receive a specialty valuation by the summation method.

The records in both these cases are clear that, despite the availability of vacant business-zoned acreage which could have been utilized for beach club purposes, not a single beach club was built in the 10 years preceding the vesting and that the developing of properties in the surrounding area was for one-family homes

on 6,000-square-foot lots selling at the time in question from $40,000 to $60,000 per completed home. It is also clear, as the trial court again noted in the Shelborne case, that the financial statements introduced into evidence indicated a net profit of $20,672.04 for the year ending September 30, 1964, $9,836.48 in 1965, $54,223.11 in 1966 and $10,822.32 in 1967. However much these figures may be accommodated by the exclusion of items of expense, such as interest not properly chargeable in an appraisal of free and clear land, it is nevertheless abundantly clear that, assuming the value of this land to be in the area of $50,000 to $60,000 an acre for residential purposes, as was found in the Colony case, an improvement capable of producing merely the afore-mentioned results would hardly justify a value of even a minor fraction of what the property was truly worth as vacant land. If we were to capitalize the average business results achieved over these four years at 10% or 12%, it would be difficult to achieve more than a $200,000 to $300,000 value for the land and improvements, a result which would be confiscatory as compared with the property's highest and best use for residential purposes.

The situation in the Colony case is comparable. Any capitalization of actual operating results would be impermissible as confiscatory. By no approach, therefore, can consideration be given to the improvements on the land as an alternative to the highest and best use as vacant land available for residential purposes. Where, as here, the highest and best use is for the land to be employed for a different purpose, no substantial value can be accorded to the improvement which has to be torn down. In *Acme Theatres* v. *State of New York* (26 N Y 2d 385, 388–389) this principle was enunciated as follows: " This is abundantly clear when we consider that in order to achieve a use of the land for purposes other than a drive-in-theatre, it would be necessary to demolish the buildings located thereon, *whose existence is inconsistent with that highest and best use* [emphasis supplied]. It is illogical to award damages for buildings that must be destroyed to achieve the use contemplated in the award of damages for the land. (*Van Kleeck* v. *State of New York,* 18 N Y 2d 897; *Matter of Erlanger,* 237 N. Y. 159, 164; *Spano* v. *State of New York,* 22 A D 2d 757.) "

Anyone seeking to acquire these properties for their present use would have considered the economic totality of the situation, and the market value necessarily would have been much less than the value of the land in a vacant condition. These parcels, therefore, do not qualify for the employment of the summation

of valuation approach, if only for the economic nonfeasibility of the existing improvements.

It is quite possible that, on a new trial to determine the value of the land in question, values higher or lower than those arrived at are achievable. It is not possible for this court upon the records in these two cases to attempt to tailor the results to the appropriate theory of value. The cases should be retried and whatever evidence is relevant on the question of the land value for residential purposes must be considered to arrive at the ultimate determination of fair and just awards.

We, therefore, must reverse the decrees in both cases, on the law and the facts, and grant new trials, with costs to abide the event.

HOPKINS, Acting P. J., MUNDER, LATHAM, SHAPIRO and BRENNAN, JJ., concur.

Partial final decree of the Supreme Court, Nassau County, entered March 7, 1973, reversed, on the law and the facts, and new trial granted, with costs to abide the event.