In the Matter of COUNTY OF SUFFOLK, Respondent, Relative to Acquiring Title to Real Property Known as the VAN BOURGONDIEN NURSER-IES, in the Town of Babylon. C. J. VAN BOURGONDIEN, INC., et al., Appellants.—In a condemnation proceeding, the claimants appeal from an order and decree (one paper) of the Supreme Court, Suffolk County, dated March 22, 1977, which, after a nonjury trial, *inter alia,* awarded them $85,000 as compensation for Damage Parcel No. 1 and $422,500 as compensation for Damage Parcel No. 2. Order and decree modified, on the law and the facts, by (1) adding thereto provisions (a) that the highest and best use of the subject property on the day title vested was as a wholesale flower growing business, the use which then existed, (b) that the said use was a specialty for which claimants are entitled to be compensated under the summation method and (c) that the value of the land is determined to be $25,000 per acre and (2) deleting (a) the amounts "eighty five thousand ($85,000)" and "four hundred twenty two thousand five hundred ($422,500)" from the first and fourth decretal paragraphs thereof and substituting therefor the amounts $39,000 and $396,875, respectively, which amounts represent only the value of the land of the damage parcels and (b) the amount "$507,500.00" from the fourth decretal paragraph thereof and substituting therefor the amount $435,875. As so modified, order and decree affirmed, with costs payable by petitioner to claimants, and proceeding remitted to the Special Condemnation Term for a trial limited to the question of the amount of the reproduction cost of the improvements, less depreciation, and the value of the plant material (nursery stock) and for the entry of an appropriate amended order and decree. At the further trial, the parties may rely upon evidence already in the record, in addition to such other evidence as they may adduce. On December 9, 1974 the claimants-appellants' real property, approximately 18.9 acres in the Town of Babylon, was condemned by the petitioner, County of Suffolk. From 1919 until "sometime in the summer of 1975", the Van Bourgondien family operated a wholesale flower growing business on the property. In its decision after the trial, the court highlighted the parties' different claims as follows: "The claimants contend that the highest and best use of the property is as it existed on December 9, 1974. They further contend that this use was a 'specialty' and that the measure of damages is the value of the land plus reproduction costs of the improvements less depreciation. The petitioner contends that the highest and best use was for residential purposes and that a market approach to value is appropriate. The divergent approaches have resulted in the following valuation:

VALUATION

"The claimants' appraiser, using a cost approach, estimated damages as follows:

| | |
|---|---|
| 1. Land value (17.435 acres) | $ 435,875. |
| 2. Main Residence | 133,250. |
| 3. Greenhouses | 664,276. |
| 4. Plant Materials | 110,878. |
| 5. Misc. bldgs. | 47,165. |
| rounded at | $ 1,391,000 |

"The petitioner's appraiser, using a market value approach, estimated damages as follows:

| | |
|---|---|
| 1. Land value (15.875 acres) | $ 422,500 |
| 2. Main house and lot (1.56 acres) | 75,000 |
| | $ 497,500." |

The court concluded: "The court finds from the credible evidence that the highest and best use of the land is for residential development, and therefore no value can be attributed to the greenhouse improvements and the nursery stock for it is '. . .illogical to award damages for buildings that must be destroyed to achieve the use contemplated in the award of damages for the land' *(Acme Theatres v State,* 26 N.Y.2d 385 * * *)." The trial court thus agreed with the theory and valuations of petitioner's appraiser, except that the court made a further award of $10,000 for Damage Parcel No. 1. Accordingly, the order and decree entered awarded damages as follows: Damage Parcel No. 1: $85,000 (main house and lot); Damage Parcel No. 2: $422,500 (land). Thus, nothing was awarded claimants for the greenhouse complex, the nursery stock or the "headquarters value" of the main residence (which was equipped and wired with devices for monitoring the boiler systems and the temperature and ventilation of the greenhouses). We disagree with the trial court. The main question on this appeal is whether the claimants' evidence meets the standards for a specialty as set forth by this court in *Matter of County of Nassau (Colony Beach Club of Lido)* (43 AD2d 45, 49, affd 39 NY2d 958): "Before a property can qualify as a specialty entitled to the summation approach, the following criteria must be established. (a) The improvement must be *unique* and must be specially built for the specific purpose for which it is designed; (b) There must be a *special use* for which the improvement is designed and the improvement must be so specially used; (c) There must be *no market* for the type of property (here, a beach and cabana club) and no sales of property for such use; and (d) The improvement must be an appropriate improvement at the time of the taking and its use must be *economically feasible and reasonably expected to be replaced."* (Emphasis in original.) In our opinion, claimants fully established their contentions that the highest and best use on the taking date was the then present usage (wholesale flower growing nursery), that the property was a specialty and that the measure of damages is the value of the land, plus reproduction costs of the improvements, less depreciation (cf. *Matter of County of Nassau [Colony Beach Club of Lido], supra).* We find that the evidence adduced by claimants specifically met all of the criteria set forth in *Colony* and that the evidence adduced by the county did not refute the claimants' proof. The case was tried with extreme thoroughness by both sides and we see no purpose in setting forth a factual review of the extensive testimony and exhibits, except to note certain significant highlights. Philip Van Bourgondien testified that the business had been founded in 1919 by his father, the late C. J. Van Bourgondien. It has remained a family business since that time. At the time of the taking there were "about 17 or 18 family members working in it", including the founder's children and grandchildren. "The business supported all of these family members". Philip testified that the nursery operation's gross sales were: in 1973-$216,000; in 1974 "It jumped to $311,000 or $312,000", "almost a $100,000 increase"; and in 1975 the figure was $306,000, and "this was not [even] a full year at the property." Although the claimants did not place their books and records in evidence, we find that there was ample proof in this record to establish the specialty nature of the subject wholesale flower growing operation—which, on the vesting date, had been in existence and operating at this site for approximately 55 years and was then supporting 17 to 18 members of the Van Bourgondien family, including the founder's grandchildren. The books and records were available and the county could

have placed them in evidence, or otherwise elicited expense figures, if it so desired (the real estate tax figures *had* been placed in evidence). Although evidence was elicited that in 1972, and again in 1973, contracts were entered into to sell the property, those contracts were subject to the purchasers obtaining a change of zone from the present Residence C to Multiple Residence. The respective purchasers withdrew their applications for zoning changes and neither sale was consummated. In this connection we note that the county's appraiser testified that there was no "reasonable probability" that the town would grant a rezoning to multiple dwelling use (see *Masten v State of New York,* 11 AD2d 370, affd 9 NY2d 796). Russell Weiss, the largest greenhouse operator on Long Island, fully attested to the specialty nature of claimants' complex and testified that claimants' greenhouses "were among the best on the Island, probably the best." The greenhouses were specially constructed and equipped. In them had been bred and grown flowers which for years had been winning awards all over the United States, Europe and, also, Israel. We hold that the contracts of sale, claimants' other prevesting explorations to determine the value of their land, the evidence that claimants had purchased land in Peconic in 1973, and the financial data adduced, were consistent with attempts made after the death of the founder to determine ways of supporting the members of the family, were consistent with plans for *expansion* and do not establish the county's theory that the operation's present usage was no longer viable at the western Suffolk County site. Although the county contended—and the trial court agreed—that on the vesting date the highest and best use was residential development under present zoning, we note that the county's own expert, Mr. Marchitelli, reported that the housing market as of the time of vesting was extremely poor. Thus, he noted that there had been a recent national recession; *"since mid-1973 the real estate industry has been in a shambles";* money was very tight; and "The simultaneous increase in the prices of both resales and new homes is causing many Long Islanders to remain in their present homes instead of buying new". Mr. Marchitelli concluded: "In summary, the housing market in December 1974 was poor. Demand was slack, while building loans and permanent mortgage financing was expensive and difficult to obtain." We hold that the property qualifies as a specialty, entitled to the summation approach, and that in addition to the market value of the land, claimants are entitled to the reproduction cost of the greenhouse complex and related buildings, less depreciation, and that they are also entitled to the value of the plant materials (cf. *Matter of County of Nassau [Colony Beach Club of Lido],* 43 AD2d 45, affd 39 NY2d 958, *supra).* The greenhouse complex and plant material must be deemed to have been annexed to the land whether classified as buildings or as fixtures, and, under the circumstances of this case, are compensable (see *Marraro v State of New York,* 12 NY2d 285; *Diocese of Buffalo v State of New York,* 24 NY2d 320; *Matter of City of New York [Merrimaker Corp.],* 51 AD2d 147, mot for lv to app den 39 NY2d 710; *Kelder v State of New York,* 22 AD2d 999). Due to the fact that the county disputed the claimants' theory of valuation and based its valuations on a different theory, no attempt was made by the county to contradict the reproduction cost, etc., figures of claimants' experts. Therefore, we remand for a new hearing to afford the county an opportunity to dispute the values advanced by claimants with respect to the greenhouses, the related improvements and the plant stock. Latham, J. P., Cohalan, Damiani and O'Connor, JJ., concur.