OPINION OF THE COURT
 

 Meyer, J.
 

 The County of Suffolk condemned the 19-acre parcel of property on which the Van Bourgondien family had conducted a flower-growing nursery business for over half a century. The property included a large greenhouse complex and several residences. The question before us is the proper method of valuing the property. Ordinarily a landowner is only entitled to the market value of his property in its highest and best use. However if a parcel is sufficiently unique it is a specialty and is valued by the so-called summation approach, at land value plus the replacement cost of improvements less depreciation. Special Term held that the property was not a specialty, that the highest and best use of the land was for residential development, and that the greenhouse complex was inconsistent with this use and therefore had no value. The Appellate Division modified, on the law and the facts, holding that the property was a specialty and should be valued accordingly. Upon remand to Special Condemnation Term the parties stipulated the reproduction cost less depreciation value of the property. The county now appeals from the amended order and decree fixing the award by the summation approach. We agree that the property is a specialty and, therefore, affirm.
 

 The condemned parcel, which consisted of 18.9 acres in western Suffolk (Town of Babylon) zoned Residential C, was improved with a greenhouse complex, a main residence, and three smaller houses. The first greenhouse was constructed in 1920 and at the time of condemnation claimants had 125,000 square feet of land under glass. The main residence was used as a headquarters in the running of the business and was equipped with special instruments so that the family could constantly monitor the atmospheric conditions in the greenhouses.
 

 In May of 1972 claimants contracted to sell the property for $725,000, contingent upon the rezoning of the land to multiple residence. The contract, which reserved to them the right to remove buildings, equipment and plants from the premises,
 
 *511
 
 terminated when the zoning application was withdrawn. A subsequent contract was terminated for like reason and the county’s appraiser testified that there was no reasonable probability that multiple residence zoning would be granted.
 

 On December 9, 1974 title to the property vested in the county. Claimants continued business on the property until September, 1975, vacating it entirely on November 2, 1975. At trial the county valued the property at $497,500, contending that its highest and best use was for residential development and that claimants had attempted to sell the property because high land taxes made the business no longer feasible in western Suffolk. There was testimony that although no wholesale flower business had been constructed or purchased as such in western Suffolk during at least the preceding five years, a number had been sold during that period for residential development. However, the evidence indicated that claimants’ business was improving, gross sales having been $216,-000 in 1973, while in 1974 they reached $311,000 and were, for the 8 to 10 months of 1975 that claimants had use of the property, $306,000. Special Condemnation Term valued the property at $507,000, holding that its best use was for residential development and attributing no value at all to the greenhouse complex. The Appellate Division having modified, the question which confronts us is whether claimants’ nursery property is to be valued as a specialty.
 

 The general rule is that when land is taken in eminent domain, its owner is to be compensated for the market value of the property in its highest and best use
 
 (Matter of Rochester Urban Renewal Agency [Patchen Post],
 
 45 NY2d 1). However, as we have previously noted, occasions arise in which property is so unique or so seldom traded that market value is not an adequate basis for compensation
 
 (id.,
 
 at pp 9-10; see, also, 1 Orgel, Valuation under Eminent Domain [2d ed], § 40). Article I (§ 7, subd [a]) of the New York State Constitution mandates that "Private property shall not be taken for public use without just compensation.” Therefore where a property is so unique as to constitute a specialty, the owner must be compensated by adding to its land value the replacement cost of the property and subtracting from that sum depreciation
 
 (Matter of Rochester Urban Renewal Agency [Patchen Post], supra).
 

 What constitutes a specialty is defined in
 
 Matter of County of Nassau (Colony Beach Club of Lido),
 
 43 AD2d 45,
 
 *512
 
 affd 39 NY2d 958. There the Appellate Division enunciated (43 AD2d, at p 49) four criteria of a specialty: "(a) The improvement must be
 
 unique
 
 and must be specially built for the specific purpose for which it is designed; (b) There must be a
 
 special use
 
 for which the improvement is designed and the improvement must be so specially used; (c) There must be
 
 no market
 
 for the type of property * * * and no sales of property for such use; and (d) The improvement must be an appropriate improvement at the time of the taking and its use must be
 
 economically feasible and reasonably expected to be replaced. ”
 
 (Emphasis in original.) In
 
 Matter of Great Atlantic & Pacific Tea Co. v Kiernan
 
 (42 NY2d 236, 240), in the context of a tax certiorari proceeding, we added a further refinement to the element of uniqueness: "a specialty may perhaps be best defined as a structure which is
 
 uniquely
 
 adapted to the business conducted upon it or use made of it
 
 and
 
 cannot be converted to other uses without the expenditure of substantial sums of money”. (Emphasis in original.) Application of these criteria to the subject property requires the conclusion that it is a specialty.
 

 The county contends that claimants’ greenhouses are not unique because they can be purchased on the open market. However the requirement of uniqueness goes to the
 
 function
 
 of the building, not to the availability of its components. Claimants’ greenhouses were specially built for the growth of plants and flowers and, the evidence establishes, would have had to be removed or destroyed rather than be readily converted in place to other uses. Clearly, they are unique structures.
 

 The second criterion is that the unique improvement actually be used for its specialized purpose. If the landowner has abandoned the specialized use of the building, it is not a specialty. Here the Van Bourgondien family conducted a wholesale flower nursery on the property for more than 50 years and continued to do so until required to vacate as a result of the condemnation.
 

 The third requirement is that there be no market for the property and no sales for such use. Again the county contends that since greenhouses can be purchased in the market, claimants’ property is not a specialty. However, the question is not whether a particular improvement can be purchased in the market, but whether there is an existing market for the
 
 property as a whole, including the greenhouses.
 
 Had there
 
 *513
 
 been any purchase of nursery property
 
 in order to run
 
 a
 
 ñower-growing business,
 
 there might be some basis for estimating the market value of the claimants’ premises. However, as the county itself points out, in the past five years no one has purchased a fully equipped property to run a flower-growing business in western Suffolk, and other such properties have been converted to residential use. Thus, there is no market by which to judge the value of claimants’ property, and the third requirement is met (see 4 Nichols, Eminent Domain, § 12.32, subd [1]).
 

 The last requirement is that at the time of the taking the improvement be appropriate both physically and economically. Physical appropriateness requires only that the structural improvements are suitable to the site
 
 (People ex rel. Hotel Paramount Corp. v Chambers,
 
 298 NY 372, 375). Of that there is no dispute. Economic appropriateness means simply that the use must be economically feasible and reasonably expected to be replaced. The county argues that high taxes made it no longer feasible for claimants to run a flower-growing business in western Suffolk, pointing out that no new flower-growing business has started up in western Suffolk in the past five years, while many existing businesses have sold their property and moved further east on Long Island. The argument misreads the
 
 Colony
 
 (43 AD2d 45, affd 39 NY2d 958,
 
 supra)
 
 case.
 

 In
 
 Colony
 
 the claimant owned a beach club at Lido Beach on the south shore of Long Island which occupied but two thirds of the land. The court’s conclusion that the beach club was not an appropriate use at its existing location and, therefore, not a specialty was apparently predicated on both functional obsolescence and underutilization of the land. Indeed, none of the surrounding beach-front land had been developed commercially in the preceding 10 years; rather it was then being developed for single-family residence. Thus the
 
 Colony
 
 record warranted a conclusion of inappropriateness, both physically and economically.
 

 Here at the time of taking, claimants’ business was a profit-making operation and was in no danger of insolvency. If anything, the business was on the upswing.
 
 *
 
 That eastern Long Island may have provided a better location from a tax
 
 *514
 
 standpoint is irrelevant so long as the purpose to which the land was being put had not become outmoded or unworkable. Furthermore, as the county’s expert conceded the residential real estate market had been stagnant for some 18 months before the taking date and on that date was "poor”. Claimants’ use of the land was appropriate economically as well as physically.
 

 Two other matters require discussion. The county claims that the fact that the main residence had been equipped and wired so that the boiler system and the temperature and ventilation of the greenhouses could be monitored did not warrant valuing it as a specialty and that the greenhouses are personal property and therefore should not have been considered in estimating the value of the property. Though if the main residence were considered separately its "special features” would not warrant use of the summation approach
 
 (Matter of Great Atlantic & Pacific Tea Co. v Kiernan,
 
 42 NY2d 236, 240,
 
 supra),
 
 the fact of the matter is that it was an integral part of nursery complex. There being contiguity, unity of use and unity of ownership, it was properly valued in the amended decree
 
 (Erly Realty Dev. v State of New York,
 
 43 AD2d 301, mot for lv to app den 34 NY2d 515;
 
 Strong v State of New York,
 
 38 AD2d 241; see
 
 Matter of Long Beach Urban Renewal,
 
 67 Misc 2d 259). With respect to the greenhouses, whether they be considered buildings or fixtures, they had been annexed to the land with the intention of permanence and would lose substantial value if removed. Moreover, the county agent advised claimants that anything in the ground had been taken by the county. The greenhouses are, therefore, compensable as fixtures (see
 
 Rose v State of New York,
 
 24 NY2d 80;
 
 Marraro v State of New York,
 
 12 NY2d 285;
 
 Matter of City of New York [Merrimaker Corp.],
 
 51 AD2d 147, mot for lv to app den 39 NY2d 710). So too are the plants
 
 (Kelder v State of New York,
 
 22 AD2d 999).
 

 Accordingly, the amended order and decree of Special Condemnation Term should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Fuchsberg taking no part.
 

 Amended order and decree affirmed, etc.
 

 *
 

 Ironically, in some instances a specialty may be economically feasible despite tax increases precisely because it has no competitors nearby
 
 (Matter of City of New York Maxwell],
 
 15 AD2d 153, 171).