OPINION OF THE COURT
Alexander, J.
The issue presented on these appeals is whether the special franchise properties of the Brooklyn Union Gas Company, and those of National Fuel Gas Distribution Corporation and National Fuel Gas Supply Corporation, are specialty property, to be valued for special franchise assessment and taxation purposes by the reproduction-cost-new-less-depreciation (RCNLD) method, or whether a capitalization-of-income method of valuation is an acceptable method of valuation of such property. The Appellate Division, in both cases, has held that the petitioners’ special franchise properties are not “specialty properties” and therefore that the capitalization-of-income method is an acceptable method of assessing the value of special franchise property in New York State. We disagree and therefore reverse the Appellate Division orders áppealed from.
I
Brooklyn Union Gas Company (Brooklyn Union) is a distributor of natural gas, servicing customers in Kings County, Queens County and half of Richmond County. It operates its gas distribution business through a system of underground mains, services and related measuring and regulatory equipment that is placed in public streets and thoroughfares. This property, by statutory definition, constitutes a “special franchise”.[1]
*482 Brooklyn Union’s distribution system of mains is primarily located under public streets, and is composed of 63% cast iron mains with joints that operate at 15 pounds of pressure and require frequent repair. No new cast iron pipes have been installed since the mid-1950’s, and none can now be installed because of the prohibitions of Public Service Commission rules. The mains are also composed of steel (34.25%) and plastic (.75%) and 2% of the system of mains belongs to New York Facilities, a joint operation of Brooklyn Union, Consolidated Edison and Long Island Lighting Company. Special Term found that the system would not be reproduced today in its present form.
Distribution’s pipelines in New York are composed 9% plastic, 25% coated steel, 63% bare steel and 4% cast iron. Special Term found that Distribution’s system would not be exactly reproduced in its present form, but would be reasonably expected to be replaced.
Special franchise property is defined as real property by Real Property Tax Law (RPTL) § 102 (12). It is subject to annual assessment by the State Board of Equalization and Assessment (RPTL 600) and all taxes and special ad valorem levies for county, city, town, village, school or special district purposes are imposed on the final assessment of each special franchise (RPTL 622). Both the tangible real property and the intangible right to use the streets and thoroughfares (the intangible franchise) are components of a special franchise, and the values of each must be added to determine the value of the entire special franchise.
In April 1980, the State Board of Equalization and Assessment (SBEA) made tentative equalized valuations for the 1980-1981 tax year of the special franchise properties belonging to Brooklyn Union, Distribution and Supply. Each challenged the tentative assessment, contending that it was erroneous by reason of overvaluation, inequality and illegality. Distribution and Supply’s challenge was rejected and they instituted proceedings against SBEA pursuant to RPTL article 7 contesting these final valuations.
Brooklyn Union’s challenge to its valuation was also rejected by SBEA and instead of being reduced its final equalized valuation was increased because of a revised city-wide equalization rate. Brooklyn Union also instituted an article 7 proceeding against SBEA charging overvaluation, illegality and inequality.
*483 At the trial of the Brooklyn Union proceeding, SBEA did not file an appraisal report or offer any testimony through its personnel as to the valuation method employed. Rather, it relied on the appraisal report and testimony of an expert employed by the City of New York (the city had been granted leave to intervene). The trial court rejected his testimony, finding that he lacked sufficient background and experience to qualify as an expert appraiser of special franchise property. The court also rejected his appraisal report because it failed to comply with the rules of the Appellate Division as to form and content. The court concluded that the record was barren of any evidence of the appraisal method employed by SBEA in arriving at its valuations. The court noted that the city’s expert used the RCNLD method, but that the value he arrived at was more than $100,000,000 higher than that arrived at by SBEA. The court concluded that he did not perform the assessments for SBEA.
The court accepted the expert opinions of the petitioner’s witnesses and their valuation of the special franchise property, which appraisals and valuations were arrived at through capitalization-of-income and original-cost-less-depreciation (rate base) appraisal methods. The court accepted the capitalization-of-income method of valuation as “a legitimate method for valuing a special franchise * * * especially when the only evidence in the record is that the system, if reproduced, would not be reproduced in its present form.” The court determined the final equalized values of Brooklyn Union’s special franchise property, located in Kings, Queens and Richmond Counties, for the tax year 1980-1981, to be $83,336,183, $45,511,625 and $25,990,355 respectively. These valuations were significantly lower than the final assessments of SBEA.
The Appellate Division affirmed, concluding that the “capitalization of income method used [by petitioner’s experts] herein provides the most accurate method of determining value”, and that rejection of the RCNLD method of appraisal was proper since “the system would never be reproduced in its present form but would be replaced with a new completely modern system”. The court found that, in the parlance of an expert real estate appraiser, “[Reproduction means replacement with an exact model” which “[i]n this case * * * is totally unrealistic”. Thus, the court held that Brooklyn Union’s franchise property “could not be considered a specialty since it is unreasonable to conclude that the facility could be replaced on an economic basis.” The court noted, moreover, that it would “reach the same result even if the facility were considered a specialty” (101 AD2d 414, 416-417).
*484 National Fuel Gas Distribution Corporation (Distribution) and National Fuel Gas Supply Corporation (Supply) are subsidiaries of National Fuel Gas Company. Distribution is a multistate retailer of natural gas serving customers in New York, Pennsylvania and Ohio. Supply accumulates and sells natural gas at the wholesale level, serving essentially the same geographic area as Distribution. The area served by Distribution and Supply in New York State comprises 12 counties in western New York. They operate this portion of their systems through pipes, mains, conduits and other tangible personal property located in public streets and thoroughfares. This property too is a “special franchise.”
Distribution and Supply commenced 10 separate proceedings challenging the SBEA assessments alleging overvaluation, inequality and illegality. The proceedings were consolidated for trial and Niagara-Wheatfield Central School District was permitted to intervene. SBEA appraisal reports, received in evidence, showed that Distribution and Supply’s special franchises for 1980 were assessed by computing the reconstruction cost new of all their tangible special franchise property in New York and deducting appropriate figures for depreciation from all causes. SBEA added 5% of the value of the tangible property as the value of the intangible franchises. The total full value assessments for Distribution and Supply were then allocated to the individual taxing jurisdictions by applying a ratio of surviving original cost in each jurisdiction to total surviving original cost for each company. Appropriate equalization rates were applied. These computations produced final total equalized special franchise assessments of $65,071,328 for Distribution and $813,694 for Supply.
Petitioners’ experts arrived at full market values of the special franchise properties of Distribution and Supply by using capitalization-of-income under the “unit” method of accounting, with petitioners’ operating multistate systems as the “unit”. They allocated a proportionate value to those portions of the “unit” located within New York State. They also used the original-cost-less-depreciation method, apparently taking as original cost figures and depreciation rates those used in determining petitioners’ “rate bases” by the Public Service Commission and the Federal Energy Regulatory Commission.
Trial Term rejected the valuations of petitioners’ experts, finding that capitalization-of-income was an inappropriate method for determining the value of a special franchise such as that under consideration here because, inter alia “[t]he basic *485 premise of the income method is that property is worth a certain capitalization of the income it produces. While this system is a complex system with each part necessarily relying upon other parts, the uniform allocation of earning power based upon original cost is risky, at best. Some parts of the system may very well throw off earnings at a greater percentage of cost than a corresponding and physically equal part.”
Trial Term concluded, as a matter of law, that “[t]he subject special franchise property is specialty property within the definition set forth in [.Matter of County of ] Suffolk (Van Bourgondieri) [47 NY2d 507]”, and that “[petitioners failed to demonstrate that the method by which [SBEA] arrived at the 1980 assessments was incorrect.” Accordingly, the petitions were dismissed.
The Appellate Division reversed, granted the petitions to the extent of annulling the final 1980 assessments and remitted the matter to SBEA for “reconsideration in light of the fact that the capitalization of income method is an acceptable method for assessing the value of the property at issue” (103 AD2d 187, 189). Citing Brooklyn Union, where it had held that property similar to that which is the subject of these appeals is not specialty property and that the capitalization-of-income method would therefore be permissible as a means of valuation, the court concluded that this record “demonstrates no reason to treat the property involved here differently * * * for the purpose of determining that it is not specialty property” (id.).
II
The courts of this State have uniformly held that the appropriate method of valuing the tangible component of special franchise property is by the reproduction-cost-new-less-depreciation method (People ex rel. Delaware, Lackawanna & W. R. R. Co. v Clapp, 152 NY 490; People ex rel. Jamaica Water Supply Co. v State Bd. of Tax Commrs., 196 NY 39; Matter of Onondaga County Water Dist. v Board of Assessors, 39 NY2d 601; Matter of Consolidated Edison Co. v State Bd. of Equalization & Assessment, 101 Misc 2d 910, mod on other grounds 83 AD2d 355, affd 58 NY2d 710). This is because such property is considered to be “specialty property” property designed for “unique” purposes or is “uniquely adapted” to the business conducted upon it or use made of it, for which there is no market, and which cannot be converted to other uses without the expenditure of substantial sums of money (Consolidated Edison, 101 Misc 2d, at pp 913-914, supra).
*486 In Matter of County of Suffolk (C.J. Van Bourgondien, Inc.) (47 NY2d 507, 512), we reaffirmed that a property is a “specialty” when it meets the four criteria enunciated by the Appellate Division in Matter of County of Nassau (Colony Beach Club) (43 AD2d 45, affd 39 NY2d 958): “(a) [t]he improvement must be unique and must be specially built for the specific purpose for which it is designed; (b) [t]here must be a special use for which the improvement is designed and the improvement must be so specially used; (c) [t]here must be no market for the type of property * * * and no sales of property for such use; and (d) [t]he improvement must be an appropriate improvement at the time of the taking and its use must be economically feasible and reasonably expected to be replaced” (43 AD2d, at p 49 [emphasis in original]).
There can be no doubt that the special franchise properties of Brooklyn Union, Distribution and Supply fully satisfy the first three criteria for “specialty property” set forth above.
The evidence in both cases establishes conclusively that the underground mains, pipes, services and related measuring and regulatory equipment that comprise the tangible special franchise property placed in the public streets and thoroughfares for the transmission of natural gas are “unique” and “specially built for the specific purpose for which [they were] designed”. This equipment was designed for the “special use” of distribution of natural gas and is being “specially used” for that purpose. It is “uniquely adapted to the business conducted upon it or use made of it and cannot be converted to other uses without the expenditure of substantial sums of money” (Matter of Great Atl. & Pac. Tea Co. v Kiernan, 42 NY2d 236, 240). Clearly, there is no market for this specially designed property, nor is there any evidence that there have been any sales of similar such property for such use.
Nonetheless, the trial court in Brooklyn Union found that the system “would not be reproduced in its present form”. The Appellate Division agreed and held that because it is “unreasonable to conclude that the facility could be replaced on an economic basis”, the property “c[an] not be considered a specialty.” This view misperceives the meaning of the requirement that in order for a property to qualify as “specialty” property “the improvement must be an appropriate improvement — and its use must be economically feasible and reasonably expected to be replaced”. This requirement relates to the use or function of the property and means that use or function must reasonably expected to be replaced. As we pointed out in Matter of County of *487 Suffolk (C. J. Van Bourgondien, Inc.) (supra), “[t]he last requirement is that at the time of the taking the improvement be appropriate both physically and economically * * * Economic appropriateness means simply that the use must be economically feasible and reasonably expected to be replaced” (id., at p 513 [emphasis added]). It is manifest that the use or function to which the tangible special franchise property of these utilities is put would be replaced or reproduced. Indeed, in Brooklyn Union, the Appellate Division found that “the system * * * would be replaced with a new completely modern system” (101 AD2d, at p 416). However, it is not necessary in order for a property to qualify as a “specialty” that the material of which it is originally composed be available or replicated. Significantly, while both courts in Brooklyn Union found that the system would not reasonably be expected to be replaced, the trial court in Distribution and Supply concluded just the opposite. Yet without discussion or explanation, the Appellate Division in the latter case apparently deemed its decision in Brooklyn Union to be controlling, and thus rejected the RCNLD valuation. Nonetheless, the Appellate Division observed in Matter of Tenneco, Inc.-Tennessee Gas Pipeline Div. v Town of Cazenovia, 104 AD2d 511), decided the same day as Distribution and Supply and likewise involving the assessment of natural gas transmission lines, that the trial court in that case properly found the pipeline property to be a specialty. The Tenneco court stated that: “The subject property meets the requirements for such treatment set forth by the Court of Appeals in Matter of County of Suffolk (C. J. Van Bourgondien, Inc.) (47 NY2d 507, 512). The pipeline is unique and specially built for the purpose of transporting natural gas and is used for that purpose. There is no market for the type of property and there are no sales of property for such use. It could not be converted without substantial expenditures and it is an appropriate improvement, which if destroyed, would be reasonably expected to be replaced or reproduced (cf. Matter of Brooklyn Union Gas Co. v State Bd., 101 AD2d 414).” (104 AD2d 511, 512, supra)[2] The Tenneco court further observed that, “[petitioner’s reliance upon cases applying the net earnings rule to value special franchises for the proposition that *488 income capitalization based on earnings is an appropriate method is misplaced. The leading case of People ex rel. Jamaica Water Supply Co. v State Bd. (196 NY 39) illustrates that the net earnings method, which capitalizes the net earnings of the taxpayer, is used to value the intangible franchise for special franchise tax purposes. There the value of the tangible real property was determined on a cost basis” (id., at pp 512-513).
So too, in these cases, the value of the tangible property properly should be determined on a cost basis. Although there is a difference between valuing property by means of the reproduction cost as opposed to using the replacement cost, this fact does not deny to special franchise property the status of “specialty” property, to be valued as such where replacement cost is used rather than reproduction cost, nor does it warrant utilizing the capitalization-of-income method of valuation with respect to petitioners’ tangible property.
We hold, therefore, that the special franchise properties of Brooklyn Union, Distribution and Supply are “specialty properties” and that the proper method of valuing their tangible property is by RCNLD, to which should be added, in order to determine the full value, the value of the intangible franchise (the right to use the public streets and thoroughfares for the placement of their tangible property), arrived at by capitalization-of-income, where there exists excess income, or by adding 5% of the value of the tangible real property where there is no excess income.
Accordingly, the order of the Appellate Division in Matter of National Fuel Gas Distrib. Corp. should be reversed and the judgments of the Supreme Court dismissing the petitions reinstated. The order of the Appellate Division in Brooklyn Union Gas Co. should be reversed, the petition dismissed and SBEA’s determination reinstated.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye and Titone concur.
In Matter of Brooklyn Union Gas Co. v State Bd.: Order reversed, with costs, petition dismissed, and the determination of the State Board of Equalization and Assessment reinstated.
In Matter of National Fuel Gas Distrib. Corp. v State Bd.: Order reversed, with costs, and the judgments of Supreme Court, Albany County, reinstated.

. Real Property Tax Law § 102 (17) provides: “ ‘Special franchise’ means the franchise, right, authority or permission to construct, maintain or operate in, under, above, upon or through any public street, highway, water or other public place mains, pipes, tanks, conduits, wires or transformers, with their appurtenances, for conducting water, steam, light, power, electricity, gas or *482 other substance. For purposes of assessment and taxation a special franchise shall include the value of the tangible property situated in, under, above, upon or through any public street, highway, water or other public place in connection therewith.”

. The court noted in Tenneco, without elucidation as to the relevant distinction, that the “instant proceeding involves a real property tax assessment as opposed to a special franchise tax assessment.” That to attain the full value of a special franchise, the intangible component must be valued and added to the value of the tangible property does not preclude the tangible property component being considered a “specialty” to be valuated by RCNLD, especially since a special franchise, is by definition, considered to be “real property” (RPTL 102 [17]).