[680 NYS2d 533]

In the Matter of Poe Center. City of New York, Appellant; 2641 Concourse Company, Respondent.

First Department, December 3, 1998

**APPEARANCES OF COUNSEL**

*Fred Kolikoff* of counsel (*Paul T. Rephen* and *Robert Pfeffer* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellant.

*Richard A. Steinberg* of counsel (*Hubert J. Brandt* on the brief; *Peter H. & Hubert J. Brandt,* attorneys), for respondent.

**OPINION OF THE COURT**

MILONAS, J. P.

The issue before us is the proper method to be used in the valuation of certain property in a condemnation proceeding commenced by the City of New York. The subject property consists of a parcel of land on which there is a four-story L-shaped building occupying less than a third of the site, with the majority of the site open space. Originally used as a home for the blind when first built, the property was purchased by the claimant real estate company in January 1971 for investment purposes and leased in April 1971 to the City for the Board of Higher Education's use at an annual rent of $435,000; pursuant to the terms of the 10-year lease, claimant made certain alterations to the structure in order for it to be used as an educational facility by Lehman College. The lease, which

was to expire in October 1981, offered a five-year renewal option to the tenant at a reduced annual rent of $252,000.

Shortly after the tenancy passed by operation of law from the Board of Higher Education to the City University (CUNY) in 1979, CUNY notified claimant that it would not exercise the renewal option. In January 1981, it sublet the property on a rent-free basis to the Board of Education for use as a public school annex. When the lease expired in October 1981, the subtenants remained and claimant commenced eviction proceedings, which became moot when the City acquired the property by condemnation on January 6, 1982. Claimant brought an action in the Court of Claims to recover compensation for the use and occupancy of the property during the brief holdover period; that court found claimant was entitled to recover the property's fair market rental value for that period, which the court determined, using the terms of the lease's renewal option, to be $252,000 a year (*2641 Concourse Co. v City Univ.*, 137 Misc 2d 802, *affd* 147 AD2d 379 *for reasons stated below*). According to the court, the substantially higher rent under the original lease was "easily explained" as "a sum sufficient to reimburse" claimant for the expense of converting the structure into a school (*supra,* at 809).

▮ In the instant condemnation proceeding to compensate claimant for the City's taking of the property, Supreme Court determined that the property was a "specialty," and, as such, warranted application of the replacement cost less depreciation method of valuation advocated by claimant. We agree with the City, however, that the property fails to qualify as a specialty, and that the income capitalization approach is the proper method of valuation. We therefore reverse and remand the matter to Supreme Court to assess the value of the property accordingly.

Of the three methodologies for valuation in both eminent domain and tax certiorari proceedings, courts generally prefer the comparable sales method. However, absent the availability of evidence of sales of similar property, as is the case here (and neither party advocates this method), "[a]ny fair and nondiscriminating method" that produces a "fair and realistic value" is acceptable (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356, *rearg. denied* 81 NY2d 784). Of the two remaining methods, courts prefer the income capitalization method of valuation for determining the value of income-producing property; this method entails the accumulation of such data as the actual income and operating expenses of the subject property

(*41 Kew Gardens Rd. Assocs. v Tyburski*, 70 NY2d 325, 331). By contrast, courts have consistently held that the replacement method of valuation (the current expense of reproducing or replacing the improvements minus the loss in value from depreciation plus the value of the site) should be used cautiously because it tends to overvalue property (*see, e.g., Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 197; *Matter of Saratoga Harness Racing v Williams*, 91 NY2d 639, 643). Thus, its application has generally been limited, in both eminent domain and tax certiorari proceedings, to properties designated as "specialties," i.e., properties so "*uniquely* adapted to the business conducted upon [them] or use made of [them]" that they "cannot be converted to other uses without the expenditure of substantial sums of money" (*Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d 236, 240; *see also, Matter of Allied Corp. v Town of Camillus, supra*, 80 NY2d, at 356; *Matter of County of Suffolk [C. J. Van Bourgondien, Inc.]*, 47 NY2d 507, 511).

While it is true that churches and schools are generally considered specialties because there is no readily recognizable market for them and testimony regarding their fair market price is difficult to ascertain (*Keator v State of New York*, 23 NY2d 337, 339), specialty status will not be automatically accorded to such property; rather, property must meet four criteria in order to qualify. These criteria, as articulated in *Matter of County of Nassau (Colony Beach Club)* (43 AD2d 45, 49, *affd* 39 NY2d 958) are

"(a) The improvement must be *unique* and must be specially built for the specific purpose for which it is designed;

"(b) There must be a *special use* for which the improvement is designed and the improvement must be so specially used;

"(c) There must be *no market* for the type of property * * * and no sales of property for such use; and

"(d) The improvement must be an appropriate improvement at the time of the taking and its use must be *economically feasible and reasonably expected to be replaced.*" (Emphasis in original.)

In the instant case, the property does not merit specialty treatment because, as the City maintains, it does not meet the fourth criterion in that the use is not "reasonably expected to be replaced." Supreme Court expressly recognized that the property failed to meet this criterion but held that the failure was not fatal to designating the property a specialty. According

to Supreme Court, this last requirement was intended for the "normal and usual situation where the nature of the business conducted on the condemned premises permits a replacement." However, as "no such possibility exists" in the instant case because claimant "is not the Board of Education" but rather is in the real estate business and "not about to build and operate another public school as a replacement facility," the court concluded that it made "no sense" to apply this final criterion here.

We find to the contrary that it is precisely for this reason— that claimant is *not* the Board of Education and has *not* been placed in the position of replacing the school but rather has used the property solely for commercial ends—that the failure to meet the fourth criterion is indeed fatal to claimant's position.

The Court of Appeals has made clear that, while this fourth criterion may not require a "literal reading" in tax assessment cases because nothing is being taken and thus nothing is in need of replacement, the issue of reproduction or replacement in eminent domain proceedings is not merely speculative or hypothetical (*Matter of Allied Corp. v Town of Camillus, supra,* 80 NY2d, at 359; *see also, Matter of County of Suffolk [C. J. Van Bourgondien, Inc.]*), 47 NY2d 507, *supra*). In *Allied Corp.,* where the Court once again reiterated the need for cautious use of the reproduction cost method, it stated that "courts are interested in making certain that governments are not forced to pay the high valuations typically produced by the reproduction cost less depreciation method" where "the owner would likely discontinue the use on his own in the absence of the taking" (80 NY2d, at 359-360). In the instant case, claimant has lost the ability to receive the rental income produced from the now-condemned property; it has not been deprived of its ability to operate a school, something it never did or intended to do. Indeed, while the mere fact that property produces rental income does not preclude consideration as a specialty (*see, e.g., Matter of City of New York [Coogan]*, 20 NY2d 618), property designed or used primarily for commercial ends may not merit specialty treatment (*Matter of Rochester Urban Renewal Agency [Patchen Post]*, 45 NY2d 1, 10; *Amsterdam Urban Renewal Agency v Masonic Assn.*, 39 AD2d 617, 618). The subject property here was acquired for and altered solely for commercial ends; as noted above, the Court of Claims found that the annual rent under the 10-year lease allowed claimant to recapture the expense of making the required alterations.

■ Finally, the City argues that, for purposes of income capitalization valuation, the doctrine of collateral estoppel applies with respect to the fair market rental value of $252,000, as determined by the Court of Claims in the previous action. We conclude that the doctrine should not be invoked because that court considered the property's rental history in determining the issue before it, rather than the factors generally cited in calculating income capitalization valuation (*41 Kew Gardens Rd. Assocs. v Tyburski, supra,* 70 NY2d, at 331). If the necessary factors were not presented and considered, collateral estoppel may not apply (*see, e.g., D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659, 664).

Accordingly, the first separate and partial final decree of Supreme Court, Bronx County (Douglas E. McKeon, J.), entered February 10, 1997, which awarded claimant the principal sum of $5,665,700 as compensation for the City's condemnation of certain property, should be reversed, on the law, without costs, and the matter remanded for further proceedings.

ROSENBERGER, NARDELLI, WALLACH and RUBIN, JJ., concur.

First separate and partial final decree, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered February 10, 1997, reversed, on the law, without costs, and the matter remanded for further proceedings.