## (June 30, 1983)

■ RAYMOND GEARY et al., Appellants-Respondents, v STATE OF NEW YORK, Respondent-Appellant. (Claim No. 61991.) SHERIDAN CHEVROLET BUICK, INC., et al., Respondents, v STATE OF NEW YORK, Appellant. (Claim No. 63391.) — Cross appeals, in claim No. 61991, from a judgment in favor of claimants, entered May 6, 1982, upon a decision of the Court of Claims (O'Shea, J.). Appeal in claim No. 63391, from a judgment in favor of claimants, entered May 13, 1982, upon a decision of the Court of Claims (O'Shea, J.). On October 17, 1977, the State appropriated two parcels of land in the City of Ogdensburg for use in construction of an arterial highway. The parcels, located across the street from each other, had been used together as part of an automobile dealership since the late 1930's. The larger tract, comprising 27,060 square feet, fronted on four streets and was improved by a two-story building which included an automobile showroom on the ground floor and storage space for automobiles on the second floor. A second building housing a service garage was also located on this parcel. The smaller parcel measured 19,712 square feet, had 90 feet of street frontage, and was improved by a three-story masonry building with a basement. The lower two floors of this building contained the dealership's body shop. The upper two floors constituted storage space for used auto parts. Raymond and Mildred Geary are the fee owners of both parcels. On

April 25, 1977, the premises were rented to Sheridan Chevrolet Buick, Inc., and Paul Knowles. The lease ran from May 1, 1977 to April 10, 1984. The Gearys and their tenants filed separate claims against the State to recover for the taking which were later consolidated for trial. Ultimately the Gearys were awarded $180,516 and the tenants $61,151, all with appropriate interest. Claimants Geary question both the amount of the total award and its division between themselves and the tenants. The State appealed to protect itself because of the separate judgments rendered against it from the same appropriation. It is undisputed that the highest and best use of the subject premises was for an automobile dealership and service operation. Claimants' appraiser, viewing the improved parcels as an integrated unit and relying primarily on the income approach, valued the fee at $524,700. He used the cost approach to valuation as a check. On the other hand, the State's appraiser, using both the market data and income approaches, arrived at a fee value of $185,000. In his market data analysis, each parcel was treated as a separate entity while in his income approach he valued the two parcels as a single entity. Claimants' expert considered the buildings totally leaseable at an economic rent of $2.50 per square foot. The State's expert felt the property commanded a net rental of $1.25 per square foot and then only for the ground floors of the main showroom building and the body shop. The trial court, culling from the parties' appraisals, made its own findings with due consideration to the experts' income approach valuations. After indicating in which respects the parties' claimed values were unsatisfactory, the court determined $1.45 per square foot to be the fair net rental. The condition of the structures was found to be such that this rental value was deemed applicable only to the 18,000 square feet making up the first two floors of the body shop and the showroom floor of the main building. Although they were seen as enhancing the over-all enterprise, the remaining floors were not assigned a specific value. The annual economic rent was established at $26,100 which, when capitalized at a rate of 10.8%, translated to a total value of $241,667. We take but one exception to the trial court's decision which was otherwise a proper exercise of its discretion. The relative incomparability of the rental properties used by the experts produced income approach valuations which were not overly satisfactory. These figures, however, were sufficient to establish a range of opinion within which the court could properly function (*Sapia v State of New York*, 33 AD2d 821). The modification we make relates to the court's failure to include the second floor of the showroom building in the rentable floor space. It appears from the record and the exhibits that this floor, which had a dual purpose, was integral to the operation of the showroom below. The two floors were connected by a 5,000 pound electric freight elevator making it possible for 10 cars to be displayed and stored on the second floor. Parts and file rooms were also located on the floor. Though he admitted this open floor space was being used as part of the dealership, the State's appraiser offered no reason for excluding this area from his rental computation. In contrast to the manifest utility of the main building's second floor, the upper two floors of the body shop appeared to be little more than areas where used parts were unsystematically placed in the hope of possible future use. Both floors were unheated and the slope of the roof caused the ceiling on the top floor to be three to three and one half feet in height over one half the floor's area. There was also evidence of water damage to these two levels. Thus, the decision not to specifically value these two floors was proper. Accordingly, we modify the award to reflect the additional 3,750 square feet found on the second floor of the main building. Applying the rates arrived at by the court, we find the rounded annual economic rent to be $31,500 which, when capitalized, yields a total value of $291,667 with the Gearys' interest

amounting to $207,095. Parenthetically, we note claimants' challenge to the State's separate treatment of each parcel in its market value analysis. While this artificial division was, in fact, improper, and a unity of use theory should have been applied to value the two parcels as a whole in making the market value determination (see *Kessler v State of New York,* 21 AD2d 568; *Red Apple Rest. v State of New York,* 46 Misc 2d 623, 632, affd 27 AD2d 417), we fail to discern the impact of this error on the decision of the trial court which was expressly based upon the respective income approach determinations of the two appraisers. There is no dispute that each appraiser valued the improved property as a unit in reaching his income approach valuation for the entire fee. Finally, we see no reason to disturb the award made to the tenants. Their failure to take an appeal from the determination below precludes us from increasing their share of the award to $84,572, which would reflect the augmented valuation of the property (*Ralston Purina Co. v Siegel's Poultry,* 24 AD2d 926; see 7 Weinstein-Korn-Miller, NY Civ Prac, par 5511.08). There is, however, no doubt that they possessed the right to recover a portion of the award. The Gearys' attempt to prove the contrary by relying on a provision of the lease which requires them to construct a new building for the tenants in the event of condemnation is unpersuasive. The lease nowhere states that the tenants have waived their right to recover a share of any condemnation award. Nor is there a legitimate basis for invoking estoppel against the tenants. The lease provision conditions any new construction upon the approval of the Chevrolet Motor Division of the General Motors Corporation. Thus, it cannot truly be deemed a substitute for the tenants' rightful share of the award. In order to justify denying the tenants any share of the award, the landlord must demonstrate that the parties unambiguously intended to have the totality of the award pass to the landlord (see *Matter of City of New York [Bronx Riv. Ave.],* 278 App Div 813; *Marfil Props. v State of New York,* 9 Misc 2d 878). The Gearys have not met this burden. Moreover, the tenants' award was not excessive for failure to take into account the fixed assets leasing agreement and liquid assets buy-out agreement which were simultaneously entered into by the Gearys and the tenants at the time of the execution of the rental lease agreement. The former were wholly distinct from the rental lease agreement and have no place in the rent calculation. Thus, the tenants' award shall remain at $61,151 as determined by the court below. Judgment entered May 6, 1982 modified, on the law and the facts, by increasing the award to claimants Raymond and Mildred Geary to $207,095, with appropriate interest thereon, and, as so modified, affirmed, without costs. Judgment entered May 13, 1982 affirmed, without costs. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.