■ FRANK MICALI CADILLAC-OLDSMOBILE, INC., Respondent, v STATE OF NEW YORK, Appellant. — In an eminent domain

proceeding, the State of New York, the condemnor, appeals from a judgment of the Court of Claims (McCabe, J.), entered June 13, 1983, which is in favor of the claimant in the principal sum of $172,677.

Judgment reversed, on the law, without costs or disbursements, and new trial granted.

The subject property fronts on Church Street in the City of Poughkeepsie in Dutchess County. It is the site of an automobile-distributorship, sales and service agency which, prior to the subject condemnation, was operated out of two buildings, one a modern structure and the other an older building.

On September 12, 1977, the State acquired a narrow strip of land along claimant's entire Church Street frontage for road improvement purposes. The sliver of land so taken was 2.9 feet wide on the west, and 1.3 feet wide on the east. Its length was 341.1 feet. Thus, the total land area taken was 914 square feet out of the property's approximately 70,630* square feet. The appropriation also involved the State taking a temporary easement on claimant's property in the course of which it demolished the older building. Also taken were outdoor lighting fixtures and poles having a stipulated value of $4,325.

The two buildings located on the property at the time of the acquisition were referred to in claimant's appraisal report and at the trial as building A and building B, respectively.

Building A is a modern bilevel structure containing a showroom, office and service areas. It was erected about eight years prior to the September 12, 1977 vesting date. Claimant's appraiser reported that on the date of appropriation, it was "in very good condition".

Building B was the original showroom, service and repair building for the subject automotive sales and service establishment. Claimant's appraiser, Eugene Albert, reported that at the time of the appropriation building B was about 57 years old, was "in generally good condition", and was used primarily for the storage, service and repair of vehicles. Both Albert and Frank Micali, claimant's president, testified, *inter alia,* that all of building B was utilized.

Both appraisers found the highest and best use of claimant's property to be that for which it was employed, an automobile sales and service establishment. The court agreed.

Both appraisers used market approaches to determine the value of the underlying strip of land that was acquired.

---

\* Claimant's appraiser's figure. The State's appraiser's figure is 72,015 square feet.

Claimant's appraiser concentrated on the value of the demolished building, which he treated as "a separate economic unit". Utilizing an income capitalization approach, he valued it at $179,000 (which was based on utilization of and attribution of equal rental value to *both* the first and second floors of building B). He reported that under a replacement cost approach, building B's value enhanced the land by $188,000. He reported that the value of the strip of land taken was $4,200. Adding the $179,000 income approach value of the demolished building and the $4,200 value of the strip taken, he concluded that the total direct damages were $183,200 and that there were no severance or consequential damages.

The State's appraiser, noting that this was a partial taking, reported before and after alleged valuations under (1) an income approach (which was based on utilization of and rental value of only the *first* floor of building B), (2) a whole-to-whole-market approach and (3) a cost approach. He stated, however, that the market and income capitalization approaches "were considered more significant than was the cost approach". He concluded that claimant's property had a *before* value of $1,140,000, an *after* value of $1,050,000, and had thus sustained damages of $90,000 for the fee acquisition, of which $4,000 was for the acquisition of the land, $1,000 for land improvements and $85,000 for the demolished building B. The State's appraiser reported that the $90,000 damages were all direct damages and that there were no severance or consequential damages.

Both appraisers found a rental value for the portion of claimant's land temporarily occupied by the State for the purpose of demolishing building B. Both also testified that they had not included in their appraisals any value for the outdoor lighting fixtures and poles, the $4,325 value of which was stipulated to by both parties at trial.

Because of purported inaccuracies and errors in appraisal theory and methodology in the filed appraisal of the State's appraiser, the trial court gave no weight to his appraisal or testimony.

The trial court found the value of the land taken by the State to be $4,200 and found the value of building B to be $159,916, based upon a gross economic unit retail of $2.10 per square foot attributed to the area of the first and second floors.

Based upon these findings, the court found direct damages of $4,200 for the land appropriated, $159,916 for the demolished building B, $4,325 for outdoor lighting fixtures and poles, and $4,236 as rental for the temporary occupancy of the portion of claimant's land described in the temporary occupancy map, for total damages of $172,677.

In our opinion, reversal is required because notwithstanding the fact that this was a partial taking, the trial court (adopting claimant's approach) simply isolated building B for valuation purposes and did not make before and after valuations. This violated the fundamental rule stated in *Diocese of Buffalo v State of New York* (24 NY2d 320, 323): "It is settled that, as a general proposition, the measure of damages in partial taking cases is the difference between the value of the whole *before* the taking and the value of the remainder *after* the taking. (See *Matter of City of New York [Fourth Ave.]*, 255 N.Y. 25; see, also, 1 Orgel, Valuation Under Eminent Domain [2d ed.], § 64, p. 290 *et seq.*)" We find no basis or justification in the evidence for departing from this settled rule in the case at bar.

The State argues that the trial court's award should be reduced by the difference between the court's finding of $159,916 for the building ("based upon the court's method of isolating the building from the rest of the property") and the building improvement damages of $75,000 (actually $85,000, as amended at trial) advanced by the State's appraiser using the correct "before and after" method of valuation.

We find, however, that the State's appraisal is defective in various respects. For example although the State's appraiser correctly asserted that this partial taking required a before and after approach, in actuality, his whole-to-whole-market-before approach did *not* treat the property as an integrated whole, but split it into two segments, the building A sector, and the building B sector. He explained: "In making a market analysis for the subject property, I have relied on *two separate types of sales*. I could not find a sale of an automobile *agency* that was totally similar to the subject property in the fact that the subject property virtually has a new auto sales agency building and an old auto sales agency building on the same property. I have, therefore, *considered three sales which I find to be comparable to the main building* found on the subject property. I have *also gathered* four *sales which would be comparable, in my opinion, to the older auto sales agency building which* I refer *to as the storage garage building*. In each case, I have analyzed the sales which I found comparable and compared them on a per square foot of building area to the subject property. You will note that I have also *split* the land area and allocated a portion to the main auto agency building and a smaller portion to the old storage garage building. I am allocating approximately *60,000* square feet to the main building complex and about 12,000 square feet to the older building" (emphasis supplied).

For his before value, the State's appraiser valued each sector separately and added together the resultant two separate before

valuations. Similarly, in his income approach appraisal, the State's appraiser explained his rental analysis before computations as follows: "I have estimated the economic rental on the subject property again in *two separate parts*. First, I have estimated an economic rent for the main building portion with its contributory land and secondly, I have estimated an economic rent for the storage garage building with its contributory land area. Leases 1, 2 and 6 have been used as a guide in estimating the rent for the main building. Leases 3, 4 and 5 have been used as a guide to estimate the economic rent for the storage garage building" (emphasis supplied).

Thus, he used a split-and-isolate technique, a technique which we find — on the facts of this case — to be unjustified and erroneous.

Further, we find well taken the following comment by the trial court in its decision: "[D]uring the trial it became clear that adjustments with respect to comparable sales were inconsistently and, in one instance, improperly made. In view of the foregoing, the Court has given no weight to the State's appraisal or to its appraiser's testimony".

In his income approach, the State's appraiser attributed value to only the first floor of building B, but to *all* of building A. The claimant's appraiser and the trial court attributed *equal* rental value to both the first and second floors of building B. We find that on the evidence in this case, attributing equal rental value to the first *and* second floors of building B was justified and proper (see *Geary v State of New York,* 95 AD2d 965).

We find the appraisals of both parties defective in theory and technique. Under the circumstances of this case, there should be a new trial (*Matter of County of Nassau [County Beach Club],* 43 AD2d 45, affd 39 NY2d 958). As we stated in the *Matter of County of Nassau* case (43 AD2d 45, 48, *supra*): "A condemnation proceeding is not a private litigation. There is a constitutional mandate upon the court to give just and fair compensation for any property taken. This means 'just' to the claimant and 'just' to the people who are required to pay for it. The rule is abundantly clear that property must be appraised at its highest and best use and paid for accordingly. Where we find it is not, as we must necessarily do in this case, an improper theory of damages having been employed, we must remit for retrial upon the proper theory".

In conclusion, we note that although the written appraisals of both parties were the cornerstones of their cases at trial and their arguments on appeal, and the requisite numbers of the printed records and briefs on appeal were filed, both parties

failed to print their appraisals as part of the record on appeal. They simply stipulated with each other to permit themselves to file with their brief two copies of their respective appraisal reports. Our rules do permit the filing of original exhibits in lieu of printing (22 NYCRR 670.8 [c] [3]). However, where the exhibits in issue are lengthy, complex, crucial documents — such as written appraisals — the parties and the court would be better served by the printing of the appraisals as part of the record on appeal rather than filing one or two copies. Lazer, J. P., Gibbons, Bracken and Lawrence, JJ., concur.